IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                    Cr. No.  21-20193-SHL

COURTNEY ALFORD,

        Defendant.

## DEFENDANT'S MOTION TO SUPPRESS
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Courtney Alford ("Mr. Alford"), by and through his counsel of record, Serena R. Gray, Assistant Federal Defender, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, states as follows:

### FACTUAL BACKGROUND

On October 13, 2020 Memphis Police Department ("MPD") was dispatched to Mr. Alford's home at 255 Flynn Rd, Memphis, TN. Julia Saine ("Saine"), a friend of Mr. Alford's, called 911 and made allegations that he pulled a gun on her. When MPD Officers Martin and Brassell arrived at Mr. Alford's residence, he was standing on the outside of the residence with the front door propped open telling Saine to leave. Saine was standing in the threshold of the door as well.

MPD approached both individuals. Saine expressly stated "this his (referring to Mr. Alford) house; he put me out." Mr. Alford also told MPD that this is his house as he continuously asked Saine to leave. The residence is a rooming house, in which Mr. Alford rents a room as he informed

1

police. Saine was in the hallway at the time picking up items that were on the floor. Saine told MPD that Mr. Alford had a gun and told them that they can come and look. Mr. Alford immediately protested as he told Saine that he does not care what she is talking about and asked her to get her belongings and go each time that she invited MPD into his home. He eventually turned to MPD and asked MPD to escort her from his house as Saine is standing in the hallway of the rooming house trying to get MPD to come into Mr. Alford's room.

MPD asked Mr. Alford for the gun and he responded that there was no gun. Saine responded to MPD "let me show you", while gesturing for MPD to enter Mr. Alford's room, at which point Mr. Alford responded "you can go somewhere with all of that" while shaking his head and waving his hands gesturing no. Brassell asked Mr. Alford to step away from the residence to which he questioned why and stated that this was his premises and he was trying to get Saine out. MPD then handcuffed Mr. Alford and placed him in the back of a patrol car while Brassell and other officers followed Saine into Mr. Alford's room to conduct a search.

She informed Brassell that the gun was in the top drawer of the chest. Brassell searched the drawer and did not find anything. Saine and MPD were leaving Mr. Alford's room when Brassell explained to Saine that they did not see a gun after searching the top drawer where she said the gun would could be located. Saine then instructed Brassell that he did not search the room, and they needed to look all over the room. MPD entered Mr. Alford's room, again, and searched the room and located a gun under the mattress and a gun case behind the television.

MPD later questioned Mr. Alford to which he told them that the gun was not his and belonged to someone else and Saine had knowledge that the gun was in the room.

## ARGUMENT

The Fourth Amendment of the United States Constitution prohibits law enforcement officers from searching a private residence without probable cause: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation."

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). This is the exclusionary rule and it "is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* (citations omitted). The overarching purpose of the exclusionary rule is to deter unlawful government behavior and compel respect for "the constitutional guaranty in the only effectively available way –by removing the incentive to disregard it. *Gross,* 662 F.3d at 401, (citing *Elkins v. United States* 364 U.S. 206, 217 (1960)). Thus, "the indirect fruits of an illegal search or arrest should be suppressed when they bear sufficiently close relationship to the underlying illegality". *Gross*, 662 F.3d at 401 (citing *New York v. Harris*, 495 U.S. 14, 19 (1990).

Mr. Alford avers that the illegal and warrantless search of his room was unconstitutional and unwarranted. For these reasons, Mr. Alford respectfully requests this Court to suppress all of the evidence found as a result of the illegal search as well as all statements made thereafter.

**(A)    MPD did not have consent to conduct the warrantless search of Mr. Alford's room.**

The Fourth Amendment requires officers to secure a warrant before conducting a search of one's home unless it falls within an exception of the warrant requirement. "One of those 'well-delineated' exceptions is the consent of the person searched. An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir.1996) (*See Schneckloth v. Bustamonte,* 412 U.S. 218, 219(1973)). "In order to consent to a search, the person purporting to consent must possess either actual or apparent authority over the item or place to be searched." *United States v. Purcell,* 526 F.3d 953, 962 (6th Cir. 2008) (*See United States v. Caldwell,* 518 F.3d 426, 429 (6th Cir.2008)).

The Supreme Court has held that actual authority in cases that involve third-party consent "rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the [property] to be searched." *Id. (*quoting *United States v. Matlock,* 415 U.S. 164, 171 n. 7 (1974). As mentioned before, it is clear from both Saine and Mr. Alford that Saine did not live at 255 Flynn. This was the home of Mr. Alford and she had been asked to leave repeatedly. Therefore, she did have joint access or control of the premises to permit MPD to enter the room of Mr. Alford to conduct a search.

The Sixth Circuit explains the apparent authority as:

> When one person consents to a search of property owned by another, the consent is valid if the facts available to the officer at the moment ... warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises. Whether the facts presented at the time of the search would warrant a man of reasonable caution to believe the third party has common authority over the property depends upon all of the surrounding circumstances. The government cannot establish that its agents reasonably relied upon a third party's apparent authority if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject

4

> to mutual use by the person giving consent, then warrantless entry is unlawful without further inquiry. Where the circumstances presented would cause a person of reasonable caution to question whether the third party has mutual use of the property, warrantless entry without further inquiry is unlawful.

*United States v. Taylor*, 600 F.3d 678, 681 (6th Cir. 2010). Moreover, even when there is the appearance that the situation at hand is unambiguous but subsequent developments and discoveries begin to create ambiguity, any apparent authority evaporates. *Purcell,* 526 F.3d at 964 (*See United States v. Rodriguez*, 497 U.S. 177, 188 (1990)). Furthermore, the government bears the burden of establishing the effectiveness of a third party's consent. *Id* at 846.

In this case, Saine is unambiguous in her assertions that she was at the home of Mr. Alford and was being asked to leave. She makes this abundantly clear when she called and talked with dispatch and when the officers arrived on the scene. More importantly, MPD officers' discussion amongst one another, which is captured on body-worn cameras, makes it clear that they were aware that Saine did not possess actual or apparent authority to consent to the search of Mr. Alford's home. As officers acknowledged that they conducted an illegal search and that it is best to get consent to search, they discuss the fact that their sergeant was concerned and not happy because it was "his" (Mr. Alford's) house. Based on Mr. Alford's continuous plead to escort Saine away from his house, and her expressly admitting that "this" was Mr. Alford's house and he has asked her to leave, there was no ambiguity as to who resided at 255 Flynn. Therefore, since it is apparent that Saine lacked actual or apparent authority to invite MPD into the home of Mr. Alford to conduct a search, the warrantless search of Mr. Alford's home was unconstitutional.

If the Court finds that there may have been the appearance of apparent authority, then Mr. Alfold avers that the warrantless search was unlawful over his protest. The Supreme Court has held in *Georgia v. Randolph,* 547 U.S. 103 (2006) that when there are competing positions as the to consent to search where one occupant is physically present and refuses to give consent then law

enforcement's warrantless search is unreasonable. Here, Mr. Alford is adamant that he wanted Saine to be removed from his home and asked MPD to get her out as she tried to get MPD to enter his room. It was clear that Mr. Alford wanted Saine out as she continued to try to force her way in with police over Mr. Alford's objections. For these reasons, Mr. Alford respectfully requests this Court to suppress all evidence found as well as all statements made thereafter.

> **B.     Any alleged statements made by Mr. Alford was made during custodial interrogation absent proper *Miranda* warnings and must be suppressed.**

Custodial interrogation generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he otherwise does not do so freely." *Miranda v. Arizona,* 384 U.S. 436, 467 (1966). Therefore, the government cannot use statements against a defendant that were elicited through custodial interrogation unless the use of procedural safeguards guarantees that he or she has been informed of and has freely waived his or her Constitutional privileges. *Id*. at 444-45.

This requirement only extends to custodial interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). Once custody is established, any statements made via interrogation must be suppressed unless they were voluntarily given. Interrogation is "express questioning" or any activity by law enforcement officers "reasonably likely to elicit an incriminating response." *Id.* at 300.

In this case, Mr. Alford is pulled from the front door of his home and handcuffed and placed in the back of a police car. After police discover the gun, he is then questioned about the firearm to which he responded. Considering these circumstances, a reasonable person would not have felt free to terminate the officers' questioning and leave the scene. Here, there is no question that Mr. Alford was in custody. "Before the police may interrogate a suspect in custody, they must first read the *Miranda* warnings." *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008)

6

(citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).  Here, officers did not do so.  Therefore, since he was not Mirandized before being interrogated about the firearm that was found after the illegal search of his residence, any subsequent statements made by Mr. Alford must be suppressed.

## CONCLUSION

MPD did not have Mr. Alford's consent to enter his home and conduct a search. The officers were aware that Saine did not reside at 255 Flynn and that she had been asked to leave. She did not have actual or apparent authority to consent to the search of Mr. Alford's home. Furthermore, MPD heard Mr. Alford expressly state for her to leave multiples times as she tried to invite MPD into his home. Therefore, the warrantless search of Mr. Alford's home was unreasonable and requires that any evidence found as well as all statements made thereafter must be suppressed.

WHEREFORE, for all of the foregoing reasons, Mr. Alford respectfully requests this Court to suppress all of the evidence found as a result of the illegal search and all statements made thereafter.

Respectfully submitted,

DORIS RANDLE HOLT
FEDERAL PUBLIC DEFENDER

s/ Serena R. Gray
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(90) 544-3895

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Mr. Nathan Vrazel, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 8th day of November 2021.

                                                s/ Serena R. Gray
                                                Assistant Federal Defender